IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-102 |
| | ) | |
| EMORY CORNELIUS CLEMONS, | ) | (PHILLIPS/GUYTON) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress [Doc. 26], filed on December 17, 2008. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). The Court held an evidentiary hearing on March 9, 2009. Assistant United States Attorneys David P. Lewen and Kelly Ann Norris represented the government. Attorney Tracy Jackson Smith appeared on behalf of the defendant, who was also present. At the conclusion of the hearing, the Court requested post-hearing briefs. The government filed a supplemental brief [Doc. 38] on March 26, 2009, and the defendant filed a supplemental brief [Doc. 39] on March 27, 2009. The Court took the motions, the related filings, and the evidence under advisement on March 27, 2009.

## I. POSITIONS OF THE PARTIES

The defendant stands indicted [Doc. 3] on a single count of possession of five grams or more or crack cocaine on December 23, 2006, with intent to distribute. With regard to the

1

evidence gained from the December 23, 2006 traffic stop, the defendant contends that the officer lacked probable cause to arrest him and search his person. He maintains that he could not be arrested for a violation of the seatbelt law because it is a misdemeanor. Alternatively, the defendant argues that the officer lacked reasonable suspicion to frisk him when he attempted to leave the scene of the traffic stop because the officer had no information that he was armed and dangerous. The government contends that the officer properly arrested the defendant for leaving the scene of the traffic stop and properly searched his person incident to his arrest.

## II. SUMMARY OF THE TESTIMONY

At the March 9, 2009 evidentiary hearing, the government called Officer David Roncska of the Knoxville Police Department (KPD). Officer Roncska testified that he had worked for the KPD for four years and was currently assigned to the East District Patrol Division. He received training during a twenty-five-week police academy and at other times during his employment. Prior to joining the KPD, he had worked as a patrol officer for the Louden Police Department. He had made approximately one thousand traffic stops as a KPD officer.

Officer Roncska testified that at 9:50 p.m., on December 23, 2006, he stopped a car at Summit and Walnut Streets for a seatbelt violation. The defendant, a passenger in the car, was not wearing his seatbelt. Officer Roncska approached the driver and informed him that he had stopped the car because the passenger was not wearing a seatbelt. He asked the defendant and the driver for identification. The driver provided a driver's license, but the defendant was not able to produce any type of identification. The defendant gave his name and birth date but was unable to provide his Social Security number, which Officer Roncska thought was unusual given the

2

defendant's age. Before Officer Roncska returned to his patrol car, he told the defendant and the driver "something to the effect of hang out here or hang tight," meaning for them to stay in the car. Once back at his patrol car, Officer Roncska requested backup because he was the only officer on the scene. He then moved to the rear passenger side of his car to finish the traffic stop. He intended to run a records check for outstanding warrants and to confirm the validity of the driver's license. He also needed to complete the citation.

Officer Roncska stated that as he was completing the traffic stop, he saw the passenger's door opening. He yelled for the defendant to stay in the car several times, but the defendant ran from the car. Officer Roncska chased the defendant and tackled him about thirty feet from the car, landing on top of the defendant. The defendant resisted by pushing the officer and disregarded the officer's orders to put his hands behind his back and to stay down. Officer Roncska physically overpowered the defendant, forcefully put the defendant's hands behind his back, and handcuffed him. Officer Roncska said he was worried that the defendant might be armed because the defendant did not know his Social Security number and fled from the car. Officer Roncska was also concerned that the driver could be armed. Officer Roncska stood the defendant up and frisked him. Officer Roncska said, at this point, the defendant was under arrest for fleeing. While patting the defendant down, he felt "a lot of large baggies" through the defendant's pocket. He removed the baggies from the defendant's pocket, saw that they contained cocaine, and replaced them in the defendant's pocket, because he did not have time to confiscate them at that time given that the driver still remained in the car. Officer Roncska said he knows that narcotics are usually accompanied by guns. Officer Roncska placed the defendant in his patrol car and then secured the driver.

3

Officer Roncska testified that Sergeant Greg Coker and Officer Woody Bingham arrived at the scene after he had placed the defendant in his patrol car. Officer Roncska returned to his patrol car to confiscate the narcotics and found the defendant removing them from his pocket and placing them in the police car. The officers removed the defendant from the back of Roncska's patrol car. The defendant, who was still handcuffed, "body check[ed]" the officers, pulled out of their grasp, and ran across Summit Hill toward Walnut Street. The officers chased him. Officer Roncska pushed the defendant, and the defendant fell down in a grassy area. Officer Roncska returned the defendant to the patrol car after removing the narcotics. The government presented a DVD (Exhibit 1) of the events of that evening, which were recorded by the equipment in Officer Roncska's patrol car.

On cross-examination, Officer Roncska testified that he stopped at a traffic light, diagonally behind a Buick, in which the defendant was riding. At that point, he could see that the defendant was not wearing a seatbelt because he could see the locking mechanism on the door frame. When the traffic light turned green, Officer Roncska pulled behind the Buick, activated his blue lights, and turned his microphone on. He did not recall asking the defendant or the driver whether they had been drinking. Roncska said he intended to issue a citation to the defendant for violation of the seatbelt law because he was a front seat passenger over the age of sixteen. He had issued approximately one hundred citations to passengers for seatbelt violations.

Officer Roncska testified that he asked the driver where they were going and the driver replied that they were going to Lonsdale. He acknowledged that the area in which he conducted the traffic stop was not a high crime area. Officer Roncska testified that in his experience, it was unusual for a person of the defendant's age not to have some type of identification

4

on his person. Roncska said the defendant gave his middle name for his first name and gave an incorrect date of birth, but Roncska did not know this at the time of the stop. He agreed that he asked the driver and the defendant when they had last been charged. He said he was attempting to engage them in a conversation to gauge their level of nervousness, to determine whether they might have a concealed weapon, to assess whether other criminal activity was afoot, and to determine whether they were being honest with him. He said the defendant's professed inability to remember his Social Security number, along with his lack of identification and his pausing when giving his date of birth, caused Roncska to be suspicious of other criminal activity and to have a gut feeling that the defendant was lying to him. Roncska said after he told the driver and the defendant to hang tight a couple of times, he returned to his patrol car. Roncska believed that the defendant and driver were not free to leave at this point. Roncska said the defendant was not under arrest before he got out of the Buick, because a seatbelt violation is not an arrestable offense.

Officer Roncska testified that he first called for backup when he returned to his patrol car after getting identifying information from the driver and the defendant. He said he may have called for backup again after handcuffing the defendant. Roncska believed his safety was at issue when the defendant got out of the Buick because he did not know if the defendant was coming out of the car with a weapon. Because the defendant ran from the car and then struggled with Roncska, Roncska believed that the defendant might be armed. He said that people do not normally act this way over a seatbelt violation. Roncska said that the defendant was under arrest for fleeing as soon as he was handcuffed and that he briefly searched the defendant incident to that arrest. He did not do a more extensive search at that point due to his poor tactical position with the driver. Officer Roncska said his concern over the driver was also the reason that he returned the narcotics to the

5

defendant's pocket.

Officer Roncska stated that while the defendant remained inside the Buick, he was being detained for a traffic violation. Once the defendant fled the Buick, Roncska ordered him to stop. The defendant did not stop, despite knowing that Roncska wanted him to stop, and so Roncska arrested him for fleeing. Officer Roncska agreed that he failed to mention in the arrest warrant that he found narcotics in the defendant's pocket.

## III. FINDINGS OF FACT

The Court makes the following factual findings based upon the evidence presented at the suppression hearing:

At 9:50 p.m., on December 23, 2006, KPD Officer David Roncska observed two males traveling in a Buick on Summit Hill Road in Knoxville. The defendant was in the front passenger seat of the Buick. While stopped at a traffic light diagonally behind the Buick, Roncska observed that the defendant was not wearing a seatbelt because Roncska could see the seatbelt's locking mechanism on the passenger-side doorframe. Roncska stopped the Buick, told the driver that he stopped him because his passenger was not wearing a seatbelt, and requested identification from both men. The defendant could not produce any identification but gave Roncska a name and date of birth. The defendant did not remember his Social Security number. Roncska told the two men to "hang tight," then went to his police car to run a records check and issue a citation to the defendant. Once back at his cruiser, Roncska called for another officer to come to the scene.

Before Officer Roncska could begin the records check, he saw the defendant open the front passenger's side door. Roncska repeatedly yelled for the defendant to remain in the car,

but the defendant got out of the car and ran. Roncska pursued him and tackled him from behind. While pinning the defendant to the ground, Roncska attempted to handcuff him. The defendant struggled and pushed Roncska. Roncska ultimately prevailed in handcuffing the defendant by forcefully pulling his hands behind his back. Roncska pulled the defendant to his feet, patted him down, and felt several large baggies through the defendant's pants pocket. Roncska removed the baggies from the defendant's pants pocket and saw that they contained cocaine. Roncska then returned the baggies to the defendant's pocket and placed the defendant in his patrol car.

## IV. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The defendant contends that Officer Roncska violated his Fourth Amendment rights[1] by seizing and searching him without a warrant or probable cause. The defendant also maintains that Officer Roncska could not frisk him because Roncska lacked reasonable suspicion that he was armed and dangerous.

### A. Traffic Stop

If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." United

---

[1]The defendant also claims [Doc. 26] that the officer obtained the evidence in violation of the Fifth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. Because the defendant does not explain this bare assertion in either his original memorandum of law [Doc. 27] or his supplemental brief [Doc. 39], the Court will only address the alleged Fourth Amendment violations.

States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993), cert. denied, 513 U.S. 828 (1994). Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. Id. at 388. Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion," United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. Ferguson, 8 F.3d at 392 (citing Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).

In the present case, the defendant concedes [Doc. 39] that Officer Roncska could properly stop the car in which he was riding, if Roncska could see that he was not wearing a seatbelt. The Court finds that Officer Roncska saw the defendant's seatbelt locking mechanism resting against the passenger-side doorframe, which caused him to believe that the defendant was not wearing a seatbelt. Exhibit 1, the DVD from Officer Roncska's in-car camera, supports Roncska's testimony that the defendant was not wearing his seatbelt because neither the defendant nor the Buick's driver objected when Roncska told them that was the reason for the stop. Tennessee law requires, in pertinent part, that "[n]o person four (4) years of age or older shall be a passenger in a passenger motor vehicle . . ., unless the person is restrained by a safety belt at all times the vehicle is in forward motion." Tenn. Code Ann. § 55-9-603(a)(2). Accordingly, Officer Roncska had probable cause to believe that a traffic violation was occurring and could properly stop the Buick and detain its occupants while issuing the traffic citation. See United States v. Blair, 524 F.3d 740, 752 (6th Cir. 2008) (holding that an officer may detain a vehicle and its occupants for the length of time necessary to complete the traffic stop). Despite the defendant's suggestion to the contrary at

8

the suppression hearing, the citation for the seatbelt violation would be properly issued to the defendant, rather than the driver, as the defendant was over age sixteen and was not wearing a seatbelt while the car was in motion. See Tenn. Code Ann. §§ 55-9-603(f)(1) (requiring an officer observing a seatbelt violation to issue a citation to the violator), -606 (providing that the driver shall not be fined for the failure of a passenger over age sixteen to wear a seatbelt).

The Court finds, and the defendant agrees [Doc. 39], that Officer Roncska could properly require him and the driver to wait inside the car while Roncska issued the traffic citation. An officer who stops a person for a traffic violation based upon probable cause can detain the person while he or she completes a records check and issues a citation. See United States v. Wellman, 185 F.3d 651, 656 (6th Cir. 1999). "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977); United States v. Burton, 334 F.3d 514, 519 (6th Cir. 2003). Due to the potential danger to an officer during a traffic stop and the relatively minimal additional intrusion on personal liberty, the Supreme Court has extended this rule to all occupants of the vehicle, holding that an officer may order passengers as well as the driver out of the vehicle for the duration of the stop. Maryland v. Wilson, 519 U.S. 408, 415 (1997).

The Courts of Appeals for the Third, Eighth, Ninth, Eleventh, and District of Columbia Circuits have recognized the corollary of the rule in Wilson: An officer can require the occupants of a vehicle to remain in or to reenter the vehicle for officer safety. United States v. Sanders, 510 F.3d 788, 790 (8th Cir.2007) (holding that officer may order passenger to reenter car during traffic stop), cert. denied, 128 S. Ct. 2072 (2008); United States v. Williams, 419 F.3d 1029,

1034 (9th Cir. 2005) (holding "that under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in <u>Wilson</u>, and specifically the need for officers to exercise control over individuals encountered during a traffic stop, outweigh the marginal intrusion on the passenger's liberty interest"); <u>Rogala v. District of Columbia</u>, 161 F.3d 44, 53 (D.C. Cir. 1998) (affirming trial court's conclusion that it was reasonable for officer attempting a field sobriety test on the driver to order the passenger to remain in the car "in order to maintain control of the situation"); <u>United States v. Moorefield</u>, 111 F.3d 10, 13 (3rd Cir. 1997) (holding that officer may order passenger to remain in car with hands raised during traffic stop); <u>see also</u> <u>United States v. Clark</u>, 337 F.3d 1282, 1288 (11th Cir. 2003) (holding it reasonable for officer to ask passenger to return to vehicle for officer safety during an investigatory stop). The Court of Appeals for the Sixth Circuit has yet to decide this issue. <u>See</u> <u>United States v. Garner</u>, Nos. 00-4395, 00-4409, 46 Fed. Appx. 278, 285 (6th Cir. Sept. 5, 2002) (summarizing government's inference that <u>Wilson</u> permits officer to order passenger to remain in vehicle but determining that officer had reasonable suspicion to stop passenger who exited vehicle during traffic stop despite officer's order that he remain inside), <u>cert. denied</u> 538 U.S. 947 (2003).

   In the present case, Officer Roncska was alone, was conducting a traffic stop at night, and had stopped a car containing two occupants. Roncska sought to have the defendant remain in the vehicle for Roncska's own safety. Moreover, the defendant was the one to whom Roncska was issuing a citation so Roncska could properly detain him for the duration of the traffic stop. At the point that the defendant got out of the car, Roncska had not conducted the records check or written the citation. Accordingly, the Court finds that the detention of the defendant in the Buick was not

unreasonable. The defendant acknowledges that Officer Roncska could properly order him to remain in the car. Nevertheless, he argues that once he was out of the car and walking away from it, Officer Roncska had neither probable cause nor reasonable suspicion to detain him forcibly because the failure to wear a seatbelt is not an offense for which he could be arrested.

**B. Seizure and Search**

Although Officer Roncska could properly detain the defendant inside of the Buick while issuing a traffic citation for failure to wear a seatbelt, he could not arrest the defendant for that traffic offense. See Tenn. Code Ann. § 55-9-603(f)(1) (instructing that an officer observing a seatbelt violation "shall not arrest or take into custody any person solely for a violation of this section"). The defendant argues that when Officer Roncska tackled him outside of the car, Officer Roncska arrested him without probable cause or reasonable suspicion to believe he had committed any arrest-worthy offense.

*1. Timing of Seizure*

An arrest occurs when either the officer uses physical force against the defendant or the defendant submits to the officer's assertion of authority. California v. Hodari D., 499 U.S. 621, 626 (1991). An officer's act of pushing a person to the ground while the person is fleeing can be an arrest under the Fourth Amendment. See United States v. Stoudemire, No. 92-5288, 1992 WL 318614, at *1 (6th Cir. Nov. 4, 1992), cert. denied, 508 U.S. 916 (1993). On the other hand, the Supreme Court has held that for Fourth Amendment purposes, a seizure does not occur, even if an officer makes a show of authority, when the suspect does not yield. Hodari D., 499 U.S. at 626, see

11

also <u>United States v. Williams</u>, 949 F.2d 220, 222 (6th Cir. 1991), <u>cert. denied</u>, 504 U.S. (1992).

The Supreme Court has enumerated certain factors that can indicate a seizure:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

<u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). In the present case, Officer Roncska began yelling at the defendant to stop and get back in the car when the defendant exited the car. Roncska chased the defendant and fell on top of him from behind. This use of physical force constituted a seizure or, actually, a second seizure, as Officer Roncska had already detained the defendant in the traffic stop. No reasonable person would believe he or she was free to leave at this point. The Court next turns to the question of whether at the time he seized the defendant, Officer Roncska had probable cause to arrest the defendant in the absence of a warrant.

### 2. Probable Cause

In the present case, the defendant was not searched until after he ran from the Buick, was forcibly stopped by Officer Roncska, struggled with and pushed Roncska, and was ultimately handcuffed. Following the altercation, Officer Roncska stood him up and frisked him. Under Tennessee law, "[i]t is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602(a). Here, the defendant left the scene where he was lawfully detained pending

12

the completion of the traffic stop, thereby obstructing Officer Roncska's ability to conduct the stop. The defendant argues that Roncska did not have probable cause to arrest him for obstructing the traffic stop because at the time Roncska tackled him, he had not used any force against Roncska as required for a violation of section 39-16-602(a). He asserts that the alleged struggle that ensued following Officer Roncska tackling him cannot be weighed in the probable cause equation because he was already arrested at that point.

The Court finds that the defendant seeks to compartmentalize the rapidly evolving events of that evening too ridgidly. Our Court of Appeals has addressed the question of the effect of an arrest for subsequent crimes following a defendant's attempt to flee in two unpublished cases. See United States v. Castillo, No. 99-5463, 2000 WL 1800481 (6th Cir. Nov. 28, 2000), cert. deneid, 532 U.S. 965 (2001), ; United States v. Jefferson, No. 98-5273, 1999 WL 519298 (6th Cir. July 15, 1999). In Castillo, the defendant argued that the officers lacked reasonable suspicion to detain him personally–although he admitted that the officers validly stopped the car because they observed his companion driving without a license–and that the evidence subsequently gained following his illegal detention should be suppressed. Castillo, No. 99-5463, at *5. Following the stop and while the officer was conducting a check of the defendant's driver's license, the defendant jumped back into the car and fled, leading the police on a high speed chase through a residential area. Id. at *1, 6. Citing with approval to decisions from other circuits, the Sixth Circuit noted "[i]t is widely recognized that '[i]f a suspect's response to an illegal stop "is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime."'" Id. at *5 (quoting United States v. Sprinkle, 106 F.3d 613, 619 (4th Cir. 1997) (quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982), cert. denied, 461 U.S. 933 (1983))); see also United States v. Dawdy, 46 F.3d 1427,

1431 (8th Cir.), cert. denied, 516 U.S. 872 (1995) (holding that "a defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for arrest").

In Bailey, the Eleventh Circuit reasoned that

> where the defendant's response is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct.

Bailey, 691 F.2d at 1017; see also Castillo, No. 99-5463, at *5 (quoting this passage from Bailey). Thus, the Castillo court held that the defendant's "high-speed flight from Bales and the other officers constituted an intervening act that purged the taint of his detention, assuming, arguendo, that his continued detention by [the officer] violated the Fourth Amendment." Castillo, No. 99-5463, at *6.

In Jefferson, the court reached the same conclusion in a case involving an altercation between the defendant and the officer following the stop. Jefferson, No. 98-5273, at *4. There, the officers had spent two days watching an apartment complex where drug deals were reportedly transpiring. Id. at 1. During the course of the surveillance, they observed persons in the parking lot pretend to be working on their cars whenever a patrol car passed. Id. On the day in question, officers approached the defendant who was standing by a parked car, began questioning him, and asked for identification, which he produced. Id. During the questioning, an officer began frisking the defendant. Id. The defendant turned to flee and either fell or was pushed to the ground, where he wrestled with the officer. Id. The officers testified that the defendant struck one of them in the face and chest as he attempted to flee. Id. The Sixth Circuit concluded that the altercation with the officers broke the taint of the stop, assuming the stop was illegal:

> There is testimony from both officers that Jefferson struck one of the officers. Tennessee law prohibits the use of force against an officer,

14

even an officer who is unlawfully attempting to stop or arrest a person. [See Tenn. Code Ann. § 39-16-602] When Jefferson used force against the officer, even assuming the original stop did not justify a search under Terry, the officers had probable cause to arrest him for this new and independent offense. Pursuant to this lawful arrest, the officers were authorized to search Jefferson, and the evidence seized as a result of the search is admissible.

Id. at *4.

In the present case, there is no question that the initial traffic stop and related detention were lawful. Nevertheless, this case is similar to Castillo and Jefferson in that the defendant's struggle with Officer Roncska constituted a new crime–obstruction of a traffic stop–that justified his arrest and subsequent search. Although there is no evidence that the defendant used force against the officer prior to the point in which Roncska stopped his flight by falling on top of him, the Court finds that the defendant pushed Roncska in the subsequent struggle to subdue and handcuff him. Rather than an "arrest" when Roncska seized him which was followed by resistance, the defendant's entire course of conduct in leaving the scene of the stop and struggling with Roncska as Roncska attempted to handcuff him constituted obstruction of the traffic stop. During the course of that obstruction, the defendant used force against Officer Roncska. Accordingly, the Court finds that the officer had probable cause to arrest the defendant for obstruction of law enforcement at the time he was seized and handcuffed and that his subsequent search of the defendant was a valid search incident to the defendant's arrest. See Chimel v. California, 395 U.S. 752, 762-63 (1969) (holding that a defendant may be searched incident to an arrest without violating the Fourth Amendment). Thus, the Court recommends that the motion to suppress the evidence found during the frisk of the defendant be denied.

*3. Reasonable Suspicion*

In the event that the District Court disagrees with this Court's finding that the officer had probable cause to arrest the defendant for obstructing Officer Roncska's investigation of the traffic violation, the Court will also examine whether Roncska possessed reasonable suspicion to conduct an investigatory stop of the defendant when the defendant left the Buick.  A police officer may briefly detain an individual on less than probable cause:  "[A] brief investigative stop, or Terry stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)) (other citations omitted).  Depending upon the circumstances giving rise to the investigative stop, the officer's reasonable suspicion permits the officer to detain the suspect while asking a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions.  Martin, 289 F.3d at 396.  If the suspect's answers fail to supply the officer with probable cause to arrest the suspect, then the officer must release the suspect.  Id. at 397.

The government argues that in addition to probable cause stemming from the defendant's fleeing from the car and resisting being handcuffed, Officer Roncska also had reasonable suspicion to stop the defendant based upon the defendant's flight from a lawful traffic stop.  The defendant contends that flight from the police alone is insufficient to provide reasonable suspicion to justify a Terry stop.  The defendant is correct that flight from the police is alone not enough to provide a valid basis for a stop, but the defendant's flight from the area may be a contributing factor to the officer's reasonable suspicion when considered in light of the totality of the circumstances.  See Illinios v. Wardlow, 528 U.S. 119, 125-26 (2000); United States v.

16

Muhammad, No. 06-5941, 2009 WL 605333 (6th Cir. Mar. 11, 2009) (holding that evasive behavior is "pertinent to an officer's decision whether to make an investigatory stop"). In the present case, the defendant's running away from the car is more than "unprovoked flight upon noticing the police," which was the subject of analysis in Wardlow. See 528 U.S. at 125. Instead, the defendant fled while being detained for a seatbelt violation. Officer Roncska testified that in his experience, it was unusual for someone to flee from a traffic stop for a seatbelt violation. Officer Roncska also testified that he was suspicious that the defendant might be involved in criminal activity because the defendant claimed to have no identification with him, did not know his Social Security number, and hesitated when asked his date of birth. Roncska said that these actions by the defendant caused him to have a gut feeling that the defendant was lying to him.

The Court assesses the reasonableness of the officer's suspicion in light of the totality of the circumstances surrounding the stop. See United States v. Arvizu, 534 U.S. 266, 273 (2002); Martin, 289 F.3d at 398. Although an officer may not rely upon a mere hunch to support a Terry stop, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274. Based on the totality of the circumstances when the defendant fled the car, especially the fact that the defendant was lawfully detained for a seatbelt violation before he fled and Officer Roncska's belief that the defendant was lying to him, the Court finds that Officer Roncska had reasonable suspicion to stop the defendant when he left the Buick and began running away.

The defendant maintains that because Roncska tackled and handcuffed him after he left the car, Roncska's actions constituted an arrest rather than an investigatory stop. "[T]he mere use or display of force in making a stop will not necessarily convert a stop into an arrest." United

17

States v. Hardnett, 804 F.2d 353, 357 (6th Cir. 1986) (holding that detaining the defendant at gunpoint did not convert the investigatory stop into an arrest when the officers justifiably feared for their personal safety).  Instead, officers conducting an investigatory stop may use "force, such as handcuffs and guns, to effect a stop when such a show of force is reasonable under the circumstances of the stop."  United States v. Walker, No. 94-3521, 1995 WL 141343, *5 (6th Cir. Mar. 31, 1995) (holding that officers reasonably handcuffed the defendant as a part of the Terry stop because the defendants tried to evade the officers and the officers suspected the defendants were armed based upon their past experience with drug traffickers), cert. denied 515 U.S. 1150(1995).  The Court of Appeals has set forth the following two-prong inquiry to assist in assessing whether a stop has ripened into an arrest:

> As indicated by the language in Terry, resolving the question of whether a seizure is an investigative stop, rather than an arrest, generally depends on the reasonableness of the stop under the circumstances.  The reasonableness is determined by examining two factors: (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.

Hardnett, 804 F.2d at 357 (citing Terry, 392 U.S. at 19-20).  The undersigned has already found the first prong of the inquiry–that Officer Roncska had reasonable suspicion justifying the stop and detention of the defendant–to be satisfied.

The second prong in essence focuses on whether the circumstances of the detention reveal that the officer's safety is at risk.  See Hardnett, 804 F.2d at 357 (officers had tip that car's occupants were armed), Houston v. Clark County Sheriff Deputy John Does 1-5, 174 F.3d 809, 815

18

(6th Cir. 1999) (officers believed defendant had been involved in a shooting), <u>see also</u> <u>United States</u> <u>v. Powell</u>, No. 99-5137, 2000 WL 357262 (6th Cir. Mar. 29, 2000) (holding  handcuffing of the defendant was permissible as a part of a <u>Terry</u> stop due to officer's reasonable suspicion that the defendant was an armed carjacker), <u>United States v. Monhollen</u>, No. 97-5855, 1998 WL 152934 (6th Cir. Mar. 24, 1998) (holding handcuffing of defendant to be permissible as part of <u>Terry</u> stop when officer received a dispatch of a shooting and knew defendant had an extensive criminal history), <u>Walker</u>, No. 94-3521, at *6 (holding that officers reasonably handcuffed the defendant as a part of the <u>Terry</u> stop because the defendants tried to evade the officers and the officers suspected the defendants were armed based upon their past experience with drug traffickers).  In comparison with this case law , the Court finds that the subject of the initial traffic stop–a seatbelt violation–is not a circumstance that suggests that the defendant would be armed and/or dangerous.  On the other hand, the defendant's actions in the wake of the stop (getting out of the car despite Officer Roncska ordering him to stay inside, running away from the officer, and forcefully resisting while the officer was trying to handcuff him) created a situation in which Roncska's fear for his personal safety was justified.  In addition to the circumstances analyzed above that create reasonable suspicion for the stop, the Court notes that Officer Roncska was conducting the stop alone at night and that the defendant's flight forced Roncska to turn his attention away from the Buick's driver.  Accordingly, the Court finds that Officer Roncska could properly seize and handcuff the defendant as a part of the investigatory stop.

3. *Terry* Frisk

With regard to the frisk of the defendant's person during an investigatory stop, an officer may frisk a suspect for weapons in order to assure the officer's safety if a reasonable officer under those circumstances would be justified in believing his or her safety was at risk. See Terry, 392 U.S. at 27; United States v. Strahan, 984 F.2d 155, 158 (6th Cir. 1993). This standard also applies when the individual is stopped for a traffic violation, permitting the officer to frisk for weapons if a reasonable person would conclude that the detainee "might be armed and presently dangerous" based upon the circumstances known at the time. Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977), see also Michigan v. Long, 463 U.S. 1032, 1048 (1983); United States v. Myers, 102 F.3d 227, 232 (6th Cir. 1996) (holding that it is well-settled that officer may frisk the subject of a traffic stop). "The focus of judicial inquiry is whether the officer reasonably perceived the subject of a frisk as potentially dangerous, not whether he 'had an indication' that the defendant was in fact armed." United States v. Bell, 762 F.2d 495, 500 n.7 (6th Cir. 1985). However,

> the Fourth Amendment does not tolerate, nor has the Supreme Court . . . ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained was armed and dangerous. The Supreme Court has, in interpreting the Fourth Amendment, struck a balance between the justifiable concern for officer safety when confronting an individual and the substantial individual interest in being free from unreasonable intrusion.

Bennett v. City of Eastpointe, 410 F.3d 810, 841 (6th Cir. 2005).

In the present case, the Court examines the totality of the circumstances to determine whether Officer Roncska had a reasonable belief that the defendant could be armed and/or potentially dangerous, thus justifying a Terry pat-down. The defendant got out of the Buick despite Roncska yelling for him to remain in it. He then ran from the car and had to be tackled by Officer

20

Roncska in order to stop his flight from the scene.  Once Officer Roncska had pinned the defendant

to the ground, the defendant continued to struggle against the officer and pushed him.  During this

time, Officer Roncska felt vulnerable to attack because he had his back to the Buick's driver.  The

Court finds the circumstances of the defendant's unexpected and aggressive flight from a traffic stop

for a seatbelt violation to provide specific and articulable facts that the defendant could be armed

and dangerous.  Accordingly, Officer Roncska could properly frisk the defendant.  While frisking

the defendant for weapons, Officer felt several large baggies through the defendant's pants pocket.

Officer Roncska's testimony reveals that it was immediately apparent to him that the pocket

contained drugs.  See Minnesota v. Dickerson, 508 U.S. 366, 374-79 (1993) (holding that an officer

can seize contraband discovered during a Terry frisk if the criminal character of the item is

immediately apparent to the officer).  Thus, the Court also recommends that the defendant's

suppression motion be denied because the officer had reasonable suspicion to stop and frisk him.

## V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to suppress the evidence resulting from the seizure and search of the defendant. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress [**Doc. 26**] be **DENIED**.[2]

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

22